Nicholson, C. J.,
delivered the opinion of the court:
The hill in this case was filed to enjoin perpetually a judgment obtained in one of the law courts of IVLemphis, against W. J. Smith, in favor of E. Gr. Norman, on a note of $6,000, executed under the following circumstances:
Norman being the owner of real estate at Tuscumbia, Alabama, on which were valuable improvements, including a tannery, with its fixtures, sold the same on the first of. November, 1861, to W. J. Smith and J. E-. Merriman for $18,000, of which part was paid in cash, and notes on time executed for the residue. One of these - notes was for $6,000, payable in two- years. All the notes were paid except this one, and suit was brought on this against Smith, and judgment rendered.
An injunction against the enforcement of the judgment ivas obtained upon three grounds, as alleged in the bill.
1. Because the property was sold by Norman for the illegal.purpose of its being used in manufacturing leather in aid ‘of the rebellion.
2. .Because Norman could not make a valid title to the property, of which he had falsely and fraudulently represented himself to- be the fee.simple owner.
3. Because it was the understanding and contract of the parties that the note would he payable in the currency of the Confederate states, and that on the day when the note became due, the payors tendered to Norman the full amount of the note and interest in Confederate treasury notes, which he refused to receive, whereby it is alleged the contract was discharged and ceased to- be obligatory.
It is conceded in the argument that complainant has failed to entitle himself to relief on the,two first grounds; but. it is insisted that he has sustained Ids allegations as to *421 the third ground, and that he is entitled to bé relieved thereon.
The note is in the usual form — payable in dollars at the end of.two years from the first of November, 1861. It has been repeatedly decided that it is competent to look, to the surrounding circumstances and to the understanding of the parties, as shown by parol proof, in ascertaining the sense in which the parties used the word “dollars.” At the date of this contract there was very little, if any, of the Confederate currency in circulation at Tuscumbia, Alabama, where the contract was made; nor does the proof show that the parties contracted with special reference to Confederate treasury notes as the currency in which the note was to be paid; but the high price agreed to be paid for the property indicates that it was not understood, either by the seller or the buyers, that the note would be payable in any other than the circulation, which might be current as money, whether bank notes or Confederate treasury notes, when it should become due.
This view of the contract is confirmed by the testimony of Merriman, who says: “After the $6,000 was paid to Norman, and the two notes given him for $6,000 each, he expressed some anxiety about the payment of said notes, and questioned me as to the probability of their being paid. I answered: ‘You are surely not thinking of being paid in gold or silver?’ His response was quite decidedly given to the effect that he did not expect payment in specie. Then, said I, you may be as morally sure of being paid these notes as you can be of anything that has not transpired. He still seemed to think that there might be something unsatisfactory about the payment, and, I believe, remarked something .about the uncertain condition of the country, the instability of banking institutions, and every one’s ignorance as to-what currency would be available wben the notes became due. At that point of the conversation, I think Mr. J. E. Chadwick or- ~W. J. Smith said something *422 about tbs Confederate States currency, as though such currency would be entirely acceptable to Col. Norman. Whether Col. Norman made any direct reply to their remark at the time or not, I am now unable to- remember. The assurance which I gave him was that he should not be paid in paper of insolvent banks, but in such as would be recognized by himself and the community as being current in common transactions among business men.”
We conclude from this evidence, as well as from all the surrounding circumstances, that the. parties used the word “dollars” in the note, to mean such a currency as should be passing currently as money in the common transactions among business men at the time the note should become due.
In this view of the contract, if Confederate treasury notes should be such a currency as the several notes matured, they would be payable in that currency, otherwise they would not. - Hence, the proof is that the first notes falling due, amounting to $6,000, were paid in Confederate notes, and so received by Norman without objection. But it does not follow that he was bound to receive Confederate notes a year afterwards, when the note now in question became due. 'Whether the note was payable in that currency, under the contract, depended upon the fact whether the Confederate notes then constituted a currency which passed current as money among business men.
The proof is, that on the first of November, 1863, the time when the note matured, the payors thereof offered to pay the note in Confederate currency, which was refused by Norman. It is now insisted that he was bound by his contract to receive the currency tendered, either’ because the contract had special reference to Confederate notes as the currency in which payment was to be made, or because Confederate notes at that time constituted a currency which passed current as money among business men.
We have already stated that the contract did not have *423 special reference to Confederate notes as the currency which Norman was bound to receive. The tender, therefore, was not good simply from the fact that it was made in Confederate notes; but, if good, it was because they were then current as money among business men in common at Tuscumbia, Alabama. It was incumbent upon complainant, as he relies on the plea of tender, to- show by proof that the currency tendered was such as was contemplated by the contract. No such proof was made, and therefore complainant has failed to sustain the third ground on which he relies for relief.
In this view of the case it is not necessary to notice the position argued with much earnestness, that as the note was payable in Confederate currency, it was a property contract, and, therefore, that a tender of the property was a discharge of the contract. It was not a property contract, but a contract to pay in dollars, with the understanding that any currency which should pass current as money among business men should be regarded as dollars. The law governing property contracts has no application to such a contract. Complainant has failed to sustain his plea of tender by the necessary proof, and, therefore, he was not entitled to the relief prayed for. But as it appears from the proof that the price agreed to be paid for the property was fixed in view of the depreciation in the currency, and that Norman was entitled to the value of the- circulation current as money at Tuscumbia, Alabama, at the time the note became due, we are of opinion that reference should be made for the purpose of ascertaining by proof the value of the currency which Norman was bound by the contract to receive, as determined in this opinion, and for the amount so ascertained Norman will be entitled to judgment. The decree will be reversed, and the cause remanded for further proceedings as indicated.
The costs of this court will be divided, and of the court below as the chancellor may decree.